Redacted Version

| | |
|---|---|
| From: | Chanda Brooks |
| To: | [redacted] |
| Cc: | JEDI RFP; [redacted] Austin, Christina M CIV OSD OGC (USA) |
| Subject: | SSI//Competitive Range Determination and Pre-Award Debriefing // Oracle // HQ0034-18-R-0077 |
| Date: | Thursday, April 18, 2019 5:35:18 PM |
| Attachments: | Answers to Debriefing Written Questions - RFP HQ0034-18-R-0077.pdf |

All active links contained in this email were disabled. Please verify the identity of the sender, and confirm the authenticity of all links contained within the message prior to copying and pasting the address to a Web browser.

Good afternoon Mark,

Attached please find responses to the additional debriefing questions you submitted on Monday.

On behalf of the DoD, I would once again like to extend my appreciation for the time and effort that went into your submittal.

Chanda R. Brooks
JEDI Cloud Contracting Officer
U.S. Department of Defense
Washington Headquarters Services
Acquisition Directorate
Phone: 703.835.7921 < tel:703.835.7921 >

On Mon, Apr 15, 2019 at 2:43 PM [redacted] < Caution-mailto: [redacted] >> wrote:

  Dear Ms. Brooks,

   Attached please find Oracle America, Inc.'s written questions in response to your April 10, 2019 Letter regarding Oracle's Exclusion from the Competitive Determination and Pre-award Debriefing for RFP HQ0034-18-R-0077, Department of Defense Joint Enterprise Defense Infrastructure (JEDI) Cloud.

  Please confirm receipt and that you can open the document.

  We look forward to better understanding the Department of Defense evaluation.

  Thank you.

  Mark

    Begin forwarded message:

    From: Chanda Brooks <chanda@friends.dds.mil < Caution-

mailto:chanda@friends.dds.mil > >
**Subject: Re: Competitive Range Determination and Pre-Award Debriefing // Oracle // HQ0034-18-R-0077**
**Date:** April 11, 2019 at 10:44:09 AM EDT
**To:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ < Caution-▮▮▮▮▮▮▮▮▮▮

**Cc:** JEDI RFP <jedi-rfp@dds.mil < Caution-mailto:jedi-rfp@dds.mil > >, "Austin, Christina M CIV OSD OGC (US)" <christina.m.austin8.civ@mail.mil < Caution-mailto:christina.m.austin8.civ@mail.mil > >, "Rayel, William (CIV)" <William.Rayel@usdoj.gov < Caution-mailto:William.Rayel@usdoj.gov > >

Hi Mark,

I am confirming that Monday, April 15, 2019 at 4:30 pm ET is the due date for the submission of questions. Please note, that the letter asks that you please submit any questions to the Contracting Officer at jedi-rfp@dds.mil < Caution-mailto:jedi-rfp@dds.mil > .

Chanda
JEDI Cloud Contracting Officer


On Thu, Apr 11, 2019 at 10:14 AM ▮▮▮▮▮▮▮▮n <▮▮▮▮▮▮▮▮▮▮▮▮ < Caution-mailto:▮▮▮▮▮▮▮▮▮▮ > > wrote:
> Dear Ms. Brooks,
>
>     Thank you for your Letter. We appreciate the opportunity to engage with the Department of Defense through the debriefing process.
>
>     For the sake of clarity, through this email we formally request a debriefing under FAR 15.505(a)(1) and acknowledge receipt of your April 10, 2019 Letter notifying Oracle of its Exclusion from the Competitive Range Determination and Pre-award Debriefing. Pursuant to the instructions in your Letter and FAR 15.505, Oracle plans to submit written questions relevant to the debriefing within three (3) business days. Please confirm that Monday, April 15, 2019 at 4:30 pm EST is the correct due date for the submission of questions and that the debriefing will remain open until the Department of Defense provides its answers.
>
>     We look forward to better understanding the Department of Defense evaluation.
>
>     Thank you.

Mark

Begin forwarded message:

> **From:** Chanda Brooks <chanda@friends.dds.mil < Caution-mailto:chanda@friends.dds.mil >>
> **Date:** April 10, 2019 at 5:04:39 AM PDT
> **To:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ < Caution-mailto:▮▮▮▮▮▮▮▮▮▮ >>
> **Cc:** JEDI RFP <jedi-rfp@dds.mil < Caution-mailto:jedi-rfp@dds.mil >>
> **Subject: Competitive Range Determination and Pre-Award Debriefing // Oracle // HQ0034-18-R-0077**
>
> Dear Mr. ▮▮▮▮▮:
>
> The DoD wishes to express its appreciation for the time and effort spent by your firm in submitting a proposal for Request for Proposals (RFP) HQ0034-18-R-0077, Department of Defense Joint Enterprise Defense Infrastructure (JEDI) Cloud. The evaluation team conducted a comprehensive and thorough evaluation of your proposal. After review of the evaluation team's findings by the Source Selection Authority, I regret to inform you that your proposal will not be selected for award. Further detail concerning your firm's evaluation is provided in the attached Exclusion from Competitive Range Determination and Pre-award Debriefing, and Factor 1 Evaluation.
>
> On behalf of the DoD, I would once again like to extend my appreciation for the time and effort that went into your submittal.
>
> Chanda R. Brooks
> JEDI Cloud Contracting Officer
> U.S. Department of Defense
> Washington Headquarters Services
> Acquisition Directorate
> Phone: 703.835.7921
> Email: chanda@friends.dds.mil < Caution-mailto:chanda@friends.dds.mil >

Contains Source Selection Information

# RESPONSES TO ORACLE AMERICA, INC. WRITTEN DEBRIEFING QUESTIONS

**1.1(1) Network**

1. How did the evaluators consider, if at all, the narrative provided by Oracle in its evaluation of 1.1 (1)?

RESPONSE - As explained in the Factor 1 Consensus Document ("TEB Report") provided as part of your debrief, the evaluators considered the Volume II materials, including the narrative, relative to Factor 1.1.

2. Elaborate and explain in detail the statement: "Offeror's proposal does not specify a comparison of aggregate network usage as required, it only specifies a comparison against installed network capacity…"

    a. What was the basis for the Agency's assumption that Oracle compared the JEDI Cloud aggregate network ingress and egress to the total network capacity versus the CCO aggregate usage?

RESPONSE - The TEB Report, provided as part of your debrief, contains a detailed explanation of the statement. The TEB Report explains that none of the columns in Table 1 contain the Offeror's CCO aggregate network usage in bytes, or a comparison between the JEDI Cloud aggregate network usage specified by the RFP and the Offeror's CCO aggregate network usage for January 2018 and February 2018. In addition, the TEB Report explains "this conclusion is further supported by the narrative for Volume II, Tab A, in which the proposal lists the same values that the [% JEDI Usage to Oracle Usage] column contains and labels them as network capacity (bandwidth) rather than aggregate network usage: 'The DoD requirements for JEDI constitute less than ▮ percent of [the Offeror's] **installed network capacity** for ingress and ▮ percent for egress'."

3. Explain in detail the Government's view of the difference between "aggregate network usage" and "installed network capacity"?

RESPONSE - "Aggregate network usage" and "network capacity" are both existing technical phrases used throughout industry to describe attributes of a network. They were not expressly defined for purposes of the RFP. The phrase "aggregate network usage" refers to the amount of network traffic that passed through a given set of infrastructure over a period of time, and would be expressed as a total amount (such as 10.6 petabytes). The phrase "installed network capacity" refers to the maximum amount of network traffic a given set of infrastructure would be able to accommodate, and would be expressed as a rate (such as 16 gigabytes per second). While the TEB did not consult the dictionary, the definition in Merriam-Webster's Dictionary[1] is also consistent with how the phrases are used throughout industry.

---

[1] Merriam-Webster's Dictionary:

  i. The definition of the word "aggregate", when used as an adjective, is "taking all units as a whole"

  ii. The definition of the word "usage," as relevant here, is the "amount . . . of using," *i.e.*, "a decreased *usage* of electricity"

  iii. The definition of the word "capacity", when used as a noun, includes the items "the potential or suitability for holding, storing, or accommodating" and "the maximum amount or number that can be contained or accommodated"

Contains Source Selection Information

4. Explain in detail the reasons that installed network usage does not meet the elastic usage requirement for the network.

RESPONSE - The term "installed network usage" does not appear in Tab A of Volume II of Oracle's proposal. The TEB Report, provided as part of your debrief, contains a detailed explanation why Oracle was unacceptable under Sub-factor 1.1(1) Network. The proposal was evaluated in accordance with RFP Section M3, Sub-factor 1.1, which states that the "Government will evaluate whether the proposal clearly demonstrates...the requirements in Section L for this sub-factor." RFP Section L4, Sub-factor 1.1 required the Offeror to provide a Summary Report, including a table that shows, among other items, the "CCO usage: aggregate of January 2018 and February 2018." Oracle's proposal did not include this information.

5. Section L.4 states, "JEDI unclassified usage must be less than 50% of the CCO usage." Oracle's proposal explains that the "JEDI usage" is ▮ for the network requirement (see Oracle's proposal narrative and Table 1).

Oracle's proposal narrative says: "The DoD requirements for JEDI constitute less than ▮ percent of **installed network capacity** for ingress and ▮ percent for egress . . ."

  a. Oracle's proposal states expressly on Tab A at page 2 that the JEDI unclassified ingress of 10.6 petabytes "is less than 50 percent of the aggregate usage during this time frame." Oracle further demonstrated this fact through the summary report table at Tab A, Appendix A. The Table shows JEDI Ingress of 10.6 PBs equates to ▮ Gbps (▮). During that same period, the CCO Ingress network usage for Oracle was ▮ Gbps. ▮ Gbps and ▮ Gbps equates to a total Ingress network usage of ▮ Gbps and ▮ is ▮ of that total usage, as reflected in the table showing difference between the JEDI Ingress aggregate usage to total CCO Ingress usage.

   i. Does the Government agree that ▮ is less than 50%?

RESPONSE – Yes.

   ii. If yes, explain in detail why the Government determined that Oracle's proposal does not meet the "less than 50%" requirement.

RESPONSE - The TEB Report, provided as part of your debrief, contains a detailed explanation of the reasons. In particular, your attention is directed to the explanation concerning the column titled "% JEDI Usage to Oracle Usage". Further, the RFP required that the Offeror's aggregate usage must be specified as a total, in bytes. Rates such as "PB/Day" and "Gbps" are not valid units of measurement for aggregate network usage over a specified time period. Oracle's proposal does not provide its aggregate network usage for January 2018 and February 2018, in bytes. This is further supported by Oracle's response to our clarification request, Item 2, which states that for the "P99" column, "Network utilization samples are collected of ingress and egress traffic in 5 minutes intervals." In other words, the P99 column cannot represent a total volume of traffic during the 2-month period referenced in Sub-factor 1.1 because the column is a rate derived entirely from interval-based data sampling. The response to our clarification request also explains that the "P99" column "reports that sustain network traffic utilization is at or below reported value 99% of the reporting period." "At **or below** the report value" means that the "P99" column does not represent actual usage. The narrative also suggests, on page 1

of Tab A of Volume II, that the ▮ comparison was calculated against the Offeror's network capacity, not its aggregate network usage: "The DoD requirements for JEDI constitute less than ▮ percent of **installed network capacity** for ingress and ▮ percent for egress..."

    b. Similarly, Oracle's proposal states on Tab A at page 2 that the JEDI unclassified egress of 6.5 petabytes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Oracle further demonstrated this fact through the summary report table at Tab A, Appendix A. The Table shows JEDI Egress of 6.5 PBs equates to ▮ Gbps. During that same period, the CCO egress network usage for Oracle was ▮ Gbps. ▮ Gbps and ▮ Gbps equates to a total network *usage* of ▮ Gbps and ▮ is ▮ of that total *usage*, as reflected in the table showing ▮ difference between the JEDI egress aggregate usage to total CCO usage.

        i. Given that the total CCO usage was calculable from the information on the table, what was the basis for the evaluators' conclusion that the Offeror's proposal does not specify their CCO aggregate network usage in the Summary Report?

RESPONSE - As explained in response to Question 5.a.ii, the total CCO usage was not calculable from the information in the table. Further, the RFP required that the Offeror's aggregate usage must be specified as a total amount, in bytes. Rates such as "PB/Day" and "Gbps" are not valid units of measurement for aggregate network usage over a specified time period. The TEB Report, provided as part of your debrief, contains a detailed explanation why Oracle was unacceptable under Sub-factor 1.1(1) Network.

    c. Given that the proposal included a comparison of the JEDI usage to the CCO usage in the last column of the summary report, what was the basis for the evaluators' finding that "the Offeror's proposal does not specify a comparison of the aggregate network as required, it only specifies a comparison against installed network capacity in the Summary Report"?

RESPONSE - The TEB Report, provided as part of your debrief, contains a detailed explanation of the reasons. In particular, your attention is directed to the explanation concerning the column titled "% JEDI Usage to Oracle Usage".

    d. In light of the foregoing, Oracle's proposal demonstrates that the estimated JEDI unclassified network usage is less than 50% of the total network usage for the months of January and February 2018. Given that Section M provides that the Agency will evaluate whether the proposal clearly demonstrates that the addition of DOD unclassified usage will not represent a majority of all unclassified usage, the unacceptable finding was in error. Please explain the rationale if the Agency disagrees.

RESPONSE - The TEB Report, provided as part of your debrief, contains a detailed explanation of the reasons Oracle's proposal failed to "demonstrate[] that the addition of DoD unclassified usage will not represent a majority of all unclassified usage, **per the requirements in Section L** for this sub-factor".

  6. The Government memo states that the "'aggregate network usage' is the total amount of data that was transferred over a specific period of time, and it must be expressed in bytes

Contains Source Selection Information

to meet the requirements of this sub-factor."

    a. Where is this stated in the RFP?

RESPONSE - Please see RFP Section L4, which states, "1. Network - Volume of commercial **client traffic, in bytes**, for public internet ingress and egress …".

    b. Where is "aggregate network usage" defined in the RFP?

RESPONSE - "Aggregate network usage" is an existing technical term used throughout industry to describe the amount of usage a network has received over a specific period of time. The term was not expressly defined for purposes of the RFP. However, the RFP required offerors to provide, in bytes, their "CCO **usage**: **aggregate** of January 2018 and February 2018."

7. Section 1.1 is entitled "Elastic Usage." The RFP defined "Elastic" as "Capabilities that can be provisioned and released to scale outward and inward commensurate with demand. To the consumer, the capabilities available for provisioning often appear to be unlimited and can be provisioned in any quantity at any time." How did the evaluators account for the RFP's definition of "elastic" in its evaluation of 1.1?

RESPONSE - The proposal was evaluated in accordance with RFP Section M3, Sub-factor 1.1.

8. Does "aggregate network usage" (the total amount of data that was transferred over a specific time period) relate to "elastic" usage, as the term "elastic" is defined in the RFP ("capabilities that can be provisioned and released to scale" during the designated time)? Explain the basis for the Government's answer.

RESPONSE - The internal decision process and justification of each element of Factor 1 is outside the scope of a debrief. The proposal was evaluated in accordance with RFP Section M3, Sub-factor 1.1.

9. When assessing network elasticity, how did the evaluators consider the maximum network throughput?

RESPONSE - The proposal was evaluated in accordance with RFP Section M3, Sub-factor 1.1.

10. Did the evaluators consider an offeror's ability to transfer large volumes of data?

RESPONSE FOR ALL OF 10 - The proposal was evaluated in accordance with RFP Section M3, Sub-factor 1.1.

    a. If so, how is this measured over 2 months (based on the Government memo's definition of aggregate network usage) if the actual volume of data is volatile?

    b. If not, please explain the rationale.

11. Did the evaluators consider an offeror's bandwidth capacity?

RESPONSE FOR ALL OF 11 - The proposal was evaluated in accordance with RFP Section M3, Sub-factor 1.1.

Contains Source Selection Information

    a. If so, how is this measured if the actual volume of data transfer is volatile and measuring data transfer over 2 months is not an accurate measure of elasticity evaluations?

    b. If not, please explain the rationale.

12. How did the evaluators account for growth rate in the Subfactor 1.1 evaluation?

RESPONSE - The proposal was evaluated in accordance with RFP, Section M3, Sub-factor 1.1.

13. How did the evaluators account for seasonality in the Subfactor 1.1 evaluation?

RESPONSE - The proposal was evaluated in accordance with RFP Section M3, Sub-factor 1.1.

14. Based on the Government memo's definition of aggregate network usage, how did the evaluators consider a CCOs ability to meet the needs of an evolving customer base?

RESPONSE - The proposal was evaluated in accordance with RFP Section M3, Sub-factor 1.1.

15. How did the evaluators consider the ability to withstand DDOS attacks as a measure of elasticity?

RESPONSE - The proposal was evaluated in accordance with RFP Section M3, Sub-factor 1.1.

16. How did the evaluators consider the P99 (ability to serve 99 percentile of customer demand) usage of Oracle Cloud?

RESPONSE - Your attention is directed to page 3 of the TEB Report, provided as part of your debrief. The proposal was evaluated in accordance with RFP Section M3, Sub-factor 1.1.

17. Is Oracle's response to Sub-factor 1.1 deemed unacceptable because it did not provide a conversion of units from PB to bytes? Oracle notes that it followed the RFP which used PBs for the JEDI estimated usage, and Oracle used PB as included throughout other sections 1.1 (1 PB = 1,000,000,000,000) to demonstrate its network is built for hyperscale and able to support 1000's of billions of bytes of data transfer.

RESPONSE - No. "PB" (petabytes) is a valid unit of measure for expressing a total amount, in bytes. "PB/Day" (petabytes per day) and "Gbps" (gigabytes per second) are rates, and, thus, are not valid units of measure for expressing a total amount, in bytes. RFP Section L4, Sub-factor 1.1 required the volume of aggregate usage to be expressed as bytes.

18. Where does the RFP specify that Sub-factor 1.1 could not be addressed in terms of bandwidth capacity?

RESPONSE - RFP Section L4, Sub-factor 1.1 specifies what was required for each Offeror to submit.

19. Why does the Government not consider bandwidth capacity to be an appropriate measure of usage and usable capacity?

RESPONSE - The Government identified its needs and issued the RFP to reflect its needs.

**COFC AR 59239**

Contains Source Selection Information

All Offerors were able to provide questions and comments before proposals were submitted regarding what each proposal must include and how each proposal would be evaluated. The Government is not providing its rationale for the evaluation criteria as part of a debrief.

20. For Sub-factor 1.1(1) (Network), why does the RFP include consideration of the Amazon construct of "Availability Zones" when regional data centers are the industry standard?

RESPONSE - "Availability Zone" is a term used by multiple commercial cloud service providers. This term is further defined in the RFP to provide further clarification to all Offerors.

**1.1 (2) Compute**

21. Section M provides that the Government will evaluate offerors under Subfactor 1.1 to determine whether the proposal demonstrates that the addition of DoD unclassified usage will not represent a majority of all unclassified usage. For compute, Section L advises the offerors to assume an average physical compute cores usage by JEDI is 46,000 cores for the month of January and February 2018. In its proposal at Tab A page 2, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ and thus clearly demonstrated that the addition of JEDI compute usage will not represent a majority of all compute usage.

   a. Where does the RFP prohibit offerors from including a table in the narrative response?

RESPONSE - The RFP does not prohibit offerors from including a table in the narrative response, but the RFP, Section L4, does require that the "summary report shall include a table illustrating the addition of JEDI Cloud usage . . . relative to CCO usage for the months of January 2018 and February 2018, excluding any services provided to a customer free of charge."

   b. Was Oracle's response to Sub-factor 1.1(2) deemed unacceptable for not repeating the same table from Tab A - page 2 on the Appendix A summary page and if so, please explain the rationale.

RESPONSE - Yes. RFP Section L1 required the proposal to be submitted in accordance with all Section L instructions. RFP Section L4, Sub-factor 1.1 explicitly required the table to appear in the summary report.

   c. How does the Agency reconcile the unacceptable finding with the fact that the RFP did not include any particular template for the reporting of the figures, the summary report shows that JEDI usage is a small fraction of the Oracle compute usage, and the RFP allows offerors to provide both summary reports and narratives?

RESPONSE - The proposal was evaluated in accordance with RFP Section M3, Sub-factor 1.1. Further, RFP Section L4, Sub-factor 1.1 explicitly required the table to appear in the summary report, but permitted a narrative statement.

**COFC AR 59240**

Contains Source Selection Information

22. Given that all information was provided in Oracle's proposal that establishes Oracle meets the compute metrics, what was the basis for finding Oracle unacceptable, i.e., "proposal does not meet requirements and contains one or more deficiencies and is unawardable"?

RESPONSE - The TEB Report, provided as part of your debrief, contains a detailed explanation of the reasons.

### 1.1(3) Storage

23. Why does the RFP specify a two-month time period from January and February 2018?

RESPONSE - The proposal was evaluated in accordance with RFP Section M3, Sub-factor 1.1. The Government is not providing its rationale for the evaluation criteria as part of a debrief.

24. Oracle demonstrated hyperscale storage ability beyond the requirements outlined in Sub-factor 1.1(3) of the RFP for the June and July time period.

RESPONSE FOR ALL OF 24- The proposal was evaluated in accordance with RFP Section M3, Sub-factor 1.1.

   a. Did the government consider this data from June and July in its evaluation?
   b. If yes, what was the result of that evaluation?
   c. If not, explain the reasons that the data was not evaluated.
   d. How can the evaluators accurately assess current storage capacities for an offeror during a two-month time period that was 9 – 10 months old at the time of submission of proposals and 17 months prior to the earliest date for contract award?

25. In picking such a short and old time period, how did the evaluators consider customers behaviors which vary greatly between CCOs and impact a CCOs deployed storage capacity strategy? (i.e., a large-scale enterprise customer base behaves different than a startup workload base).

RESPONSE - The proposal was evaluated in accordance with RFP Section M3, Sub-factor 1.1. The Government is not providing its rationale for the evaluation criteria as part of a debrief.

26. How did the evaluators consider peak customer storage volumes which would reflect ability to serve customer traffic?

RESPONSE - The proposal was evaluated in accordance with RFP Section M3, Sub-factor 1.1.

27. The RFP definitions related to storage include the following:

- "Online storage - Storage that is immediately accessible to applications without human intervention.
- Nearline storage - Storage not immediately available, but can be brought online quickly without human intervention.
- Offline Storage - Data not immediately available, requiring some human or

Contains Source Selection Information

scheduled intervention to become online. Also known as Cold Storage."

Oracle's response explained that it not only met all functional requirements in storage Oracle actually exceeded the requirements because at Oracle, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

    a. What was the government's evaluation of these capabilities?

RESPONSE - The proposal was evaluated in accordance with RFP Section M3, Sub-factor 1.1. The TEB Report, provided as part of your debrief, contains a detailed explanation of why Oracle was unacceptable under Sub-factor 1.1(3) Storage.

    b. Please explain how the Government deemed Oracle's response unacceptable given that Oracle demonstrated it exceeds the functionality in storage definitions.

RESPONSE - The proposal was evaluated in accordance with RFP Section M3, Sub-factor 1.1. The TEB Report, provided as part of your debrief, contains a detailed explanation of why Oracle was unacceptable under Sub-factor 1.1(3) Storage. In summary, the data supplied by the Offeror showed that the addition of JEDI storage usage would result in JEDI storage usage comprising more than 50% of the Offeror's CCO storage usage. Your attention is directed to the explanation "this proposal is found 'Unacceptable' for Subfactor 1.1(3) **because the calculated JEDI Cloud daily average storage usage is** ▓▓▓▓▓▓▓."

28. Please explain whether the Government deemed Oracle's response unacceptable because Oracle labeled its storage options differently than the naming convention of online, nearline and offline storage?

RESPONSE - The Government did not deem Oracle's response unacceptable because of naming conventions.

    a. Section L directs the offeror to calculate average storage in use by taking the sum of the total storage in use each day and dividing it by the number of days in that time. To the extent the agency sought the average storage data separated by online, nearline, and offline storage, why not ask a clarification question?

RESPONSE – Fulfilling the RFP requirement of providing the average storage for online, nearline, and offline storage, after proposal submission, would have been a proposal revision, and, thus, it would have been a "discussion," not a "clarification." RFP Section M2 provided for the possibility of discussions after establishing a competitive range, not during the gate criteria evaluation.

29. The Government memo concludes stating "Offeror's proposal does not demonstrate that the addition of DOD unclassified usage will not represent a majority of all unclassified usage".

    a. Explain in detail the basis for such a conclusion when the JEDI contract will not be awarded until mid-July 2019 at the earliest? In the Government response, please address specifically the fact that the contract will not be awarded until July 2019 at the earliest and the reasons that the Government considers data from January and February 2018 as relevant to the Government's conclusion regarding Oracle's capabilities in July 2019.

RESPONSE - The proposal was evaluated in accordance with RFP Section M3, Sub-factor 1.1. The TEB Report, provided as part of your debrief, contains a detailed explanation of why Oracle

Contains Source Selection Information

was unacceptable under Sub-factor 1.1. The Government is not providing its rationale for the evaluation criteria as part of a debrief.

    b. Given that Section M provides for an evaluation under Subfactor 1.1 to determine whether the proposal demonstrates that the addition of DoD unclassified usage will not represent a majority of all unclassified usage, and Oracle's proposal establishes such ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ what was the basis for finding Oracle unacceptable under Subfactor 1.1.(3)?

RESPONSE - The proposal was evaluated in accordance with RFP Section M3, Sub-factor 1.1. The TEB Report, provided as part of your debrief, contains a detailed explanation of why Oracle was unacceptable under Sub-factor 1.1(3) Storage.

    c. Explain in detail the basis for the Government's conclusion given Oracle's proposal narrative.

RESPONSE - The proposal was evaluated in accordance with RFP Section M3, Sub-factor 1.1. The TEB Report, provided as part of your debrief, contains a detailed explanation of why Oracle was unacceptable under Sub-factor 1.1.

    d. Explain in detail the basis for the Government's conclusion based on Oracle providing more current data, specifically, data from June and July 2018.

RESPONSE - The proposal was evaluated in accordance with RFP Section M3, Sub-factor 1.1. The TEB Report, provided as part of your debrief, contains a detailed explanation of why Oracle was unacceptable under Sub-factor 1.1.

    e. Given Oracle's proposal establishes it has significantly greater capacity than the estimated JEDI usage and current Oracle usage, what is the basis for finding Oracle unacceptable?

RESPONSE - The TEB Report, provided as part of your debrief, contains a detailed explanation of why Oracle was unacceptable under Sub-factor 1.1.

**COFC AR 59243**